| | | |
|---|---|---|
| RETURN DATE: SEPTEMBER 27, 2011 | : | SUPERIOR COURT |
| ppa VONETTA | : | JUDICIAL DISTRICT OF FAIRFIELD |
| CYRUS-BARKER and JONATHAN MORA-ALPIZAR | : | |
| VONETTA CYRUS-BARKER, INDIVIDUALLY, | : | |
| and JONATHAN MORA-ALPIZAR and | : | |
| VONETTA CYRUS-BARKER, INDIVIDUALLY | : | |
| | | |
| V. | : | AT BRIDGEPORT |
| | | |
| OPTIMUS HEALTH CARE, INC., | : | |
| BRENDA KULIKOWSKI and BRIDGEPORT HOSPITAL | : | AUGUST 24, 2011 |

## COMPLAINT

COUNT ONE:
          ppa VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR v.
OPTIMUS HEALTH CARE, INC.

1.      At all times mentioned herein the defendant, OPTIMUS HEALTH CARE, INC., was a professional corporation licensed to do business by the State of Connecticut and located in Bridgeport, Connecticut, comprised of obstetricians, certified nurse midwives, nurses and other health care professionals specializing in the care of pregnant women, pre-natally, fetus in utero, during labor and delivery and postnatally.

2.      At all times mentioned herein, BRENDA KULIKOWSKI, a certified nurse midwife, was a servant, agent, apparent agent and/or employee of the defendant, OPTIMUS HEALTH CARE, INC.

3.      Commencing on or about October 29, 2008, and continuing to on or about May 28, 2009, for the same or similar condition, the defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees undertook the care, treatment, monitoring, diagnosing and supervision of the infant plaintiff, I                        then in utero, and the infant plaintiff's mother, VONETTA CYRUS-BARKER, for pregnancy.

1

4.      While under the care, treatment, monitoring, diagnosing and supervision of the defendant, OPTIMUS HEALTH CARE, INC., its servants, agents, apparent agents and/or employees, _____ suffered severe, serious, painful and permanent conditions as hereinafter set forth in Paragraph 6.

5.      The said injuries were caused by the failure of the defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees to exercise reasonable care under all of the facts and circumstances then and there present in that they:

      a.    failed to adequately and properly care for, treat, diagnose and supervise then in utero, and, VONETTA CYRUS-BARKER during pregnancy;

      b.    failed to recognize and identify VONETTA CYRUS-BARKER'S risk of cephalopelvic disproportion and to estimate the fetal weight;

      c.    failed to recognize and appreciate additional risk factors for cephalopelvic disproportion such as maternal obesity and a 71-pound weight gain;

      d.    failed to consider the importance of additional risk factors for cephalopelvic disproportion such as two previous miscarriages and the previous birth of a 10-pound. baby;

      e.    failure to document the history of the previous birth of VONETTA MORA-CYRUS;

      f.    failure to document previous gestational diabetes;

      g.    failed to order early glucose screening and identify the importance of the 28 week glucose screening as borderline;

      h.    failed to identify the importance of persistent glucosuria;

      i.    failure to identify the importance of an abnormal increase in fundal height at 32, 34 and 38 weeks gestation;

      j.    failure to do an ultrasound when risk factors indicated a macrosomic baby;

k.      failed to properly estimate fetal weight of

l.      failed to adequately and properly assess VONETTA CYRUS-BARKER's ability to deliver vaginally;

m.      failed to discuss options for delivery and discuss risks and benefits of a cesarean section versus a vaginal birth;

n.      failed to provide assistance to the physician who possessed the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise,                    ‹US, then in utero, and VONETTA CYRUS-BARKER, during her pregnancy;

o.      failed to promulgate and/or enforce rules, regulations, standards and protocols for the treatment of patients such as                    then in utero, and, VONETTA CYRUS-BARKER.

6.      As a result of the carelessness and negligence of the defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees has suffered the following severe, serious, painful and permanent injuries:

a.      shoulder dystocia;

b.      right arm brachial plexus palsy;

c.      right brachial plexus dysfunction;

d.      weak right hand grasp;

e.      cannot pronate well;

f.      unable to supinate;

g.      decrease elbow flexion;

h.      does not lift up her right arm spontaneously over her head;

3

    i.       tightness of adduction/abduction external rotation;

    j.       can only rotate her right arm with assistance;

    k.      continues to cup her fingers, does not open or spread fingers;

    l.       limited right wrist extension;

    m.     limitation of deltoid and biceps function;

    n.      decreased range of motion of right shoulder, elbow, wrist and hand;

    o.      prolonged rehabilitation;

    p.      surgical procedure;

    q.      probable future surgeries and procedures

    r.      psychological, physiological and neurological sequelae.

    7.     As a result of her injuries,                    has been permanently deprived of her ability to carry out and enjoy life's activities and her earning capacity has been permanently diminished.

    8.     As a further result of the aforementioned injuries and damages, from age 18, will incur expenses for medical care and treatment and other costs for special education, rehabilitation and habilitation, all to her financial loss.

    9.     On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

COUNT TWO:

    VONETTA CYRUS-BARKER, INDIVIDUALLY V. OPTIMUS HEALTH CARE, INC.

    1.-6.    Paragraphs 1 through 6 of COUNT ONE are hereby incorporated and made paragraphs 1 through 6 of this COUNT TWO.

    7.    At all times mentioned herein, VONETTA CYRUS-BARKER, was and still is the mother of the infant plaintiff,

    8.    The defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees, knew or should have known that their conduct involved an unreasonable risk of causing emotional distress and that the distress might result in illness or bodily harm.

    9.    The defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees, knew or should have known that their conduct was foreseeable and likely to cause VONETTA CYRUS-BARKER emotional distress.

    10.    The fear and severe psychological, physiological and emotional distress suffered by VONETTA CYRUS-BARKER was reasonable in light of the conduct of the defendant, OPTIMUS HEALTH CARE, INC. and its servants, agents, apparent agents and/or employees.

    11.    The conditions described above are painful, serious and permanent in their nature and in their effects and have impaired VONETTA CYRUS-BARKER'S ability to carry on and enjoy life's activities.

12.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

**COUNT THREE:**
     **JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, INDIVIDUALLY v. OPTIMUS HEALTH CARE, INC.**

1.-6.    Paragraphs 1 through 6 of COUNT ONE are hereby incorporated and made paragraphs 1 through 6 of this COUNT THREE.

7.    At all times mentioned, JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, were and still are the parents and natural guardians of                    and are responsible for the care and support of                    until at least age 18.

8.    As a result of the injuries to                    , JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, have incurred and will continue to incur expenses for medical care and treatment, special education, habilitation and rehabilitation, all to their financial loss.

9.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

6

COUNT FOUR:

ppa VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR v.
BRENDA KULIKOWSKI

1.     At all times mentioned herein the defendant, BRENDA KULIKOWSKI, held herself out to the general public as a certified nurse midwife duly licensed to practice midwifery with the State of Connecticut and practicing in Bridgeport, Connecticut.

2.     At all times mentioned herein, the defendant, BRENDA KULIKOWSKI was a servant, agent, apparent agent and/or employee of the co-defendant, OPTIMUS HEALTH CARE, INC.

3.     Commencing on or about October 29, 2008, and continuing to on or about May 28, 2009, for the same or similar condition, the defendant, BRENDA KULIKOWSKI, undertook the care, treatment, monitoring, diagnosing and supervision of the infant plaintiff,
then in utero, and the infant plaintiff's mother, VONETTA CYRUS-BARKER, for pregnancy.

4.     While under the care, treatment, monitoring, diagnosing and supervision of the defendant, BRENDA KULIKOWSKI,                           suffered severe, serious, painful and permanent conditions as hereinafter set forth in Paragraph 6.

5.     The said injuries were caused by the failure of the defendant, BRENDA KULIKOWSKI, to exercise that degree of care and skill ordinarily and customarily used by nurse midwives under all of the facts and circumstances then and there present in that she:

      a.     failed to adequately and properly care for, treat, diagnose and supervise then in utero, and, VONETTA CYRUS-BARKER during pregnancy;

      b.     failed to recognize and identify VONETTA CYRUS-BARKER'S risk of cephalopelvic disproportion and to estimate the fetal weight;

c.     failed to recognize and appreciate additional risk factors for cephalopelvic disproportion such as maternal obesity and a 71-pound weight gain;

d.     failed to consider the importance of additional risk factors for cephalopelvic disproportion such as two previous miscarriages and the previous birth of a 10-pound. baby;

e.     failure to document the history of the previous birth of VONETTA MORA-CYRUS;

f.     failure to document previous gestational diabetes;

g.     failed to order early glucose screening and identify the importance of the 28 week glucose screening as borderline;

h.     failed to identify the importance of persistent glucosuria;

i.     failure to identify the importance of an abnormal increase in fundal height at 32, 34 and 38 weeks gestation;

j.     failure to do an ultrasound when risk factors indicated a macrosomic baby;

k.     failed to properly estimate fetal weight of

l.     failed to adequately and properly assess VONETTA CYRUS-BARKER ability to deliver vaginally.

m.     failed to discuss options for delivery and discuss risks and benefits of a cesarean section versus a vaginal birth.

6.     As a result of the carelessness and negligence of the defendant, BRENDA KULIKOWSKI,                              has suffered the following severe, serious, painful and permanent injuries:

a.     shoulder dystocia;

b.     right arm brachial plexus palsy;

c.     right brachial plexus dysfunction;

d.   weak right hand grasp;

e.   cannot pronate well;

f.   unable to supinate;

g.   decrease elbow flexion;

h.   does not lift up her right arm spontaneously over her head;

i.   tightness of adduction/abduction external rotation;

j.   can only rotate her right arm with assistance;

k.   continues to cup her fingers, does not open or spread fingers;

l.   limited right wrist extension;

m.   limitation of deltoid and biceps function;

n.   decreased range of motion of right shoulder, elbow, wrist and hand;

o.   prolonged rehabilitation;

p.   surgical procedure;

q.   probable future surgeries and procedures

r.   psychological, physiological and neurological sequelae.

7.   As a result of her injuries,                       has been permanently deprived of her ability to carry out and enjoy life's activities and her earning capacity has been permanently diminished.

8.    As a further result of the aforementioned injuries and damages,

from age 18, will incur expenses for medical care and treatment and other costs for special education, rehabilitation and habilitation, all to her financial loss.

9.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

COUNT FIVE:
   VONETTA CYRUS-BARKER, INDIVIDUALLY, V. BRENDA KULIKOWSKI

1.-6.    Paragraphs 1 through 6 of COUNT FOUR are hereby incorporated and made paragraphs 1 through 6 of this COUNT FIVE.

7.    At all times mentioned herein, VONETTA CYRUS-BARKER, was and still is the mother of the infant plaintiff,

8.    The defendant, BRENDA KULIKOWSKI, knew or should have known that her conduct involved an unreasonable risk of causing emotional distress and that the distress might result in illness or bodily harm.

9.    The defendant, BRENDA KULIKOWSKI, knew or should have known that her conduct was foreseeable and likely to cause VONETTA CYRUS-BARKER emotional distress.

10.    The fear and severe psychological, physiological and emotional distress suffered by VONETTA CYRUS-BARKER was reasonable in light of the conduct of the defendant, BRENDA KULIKOWSKI.

11.    The conditions described above are painful, serious and permanent in their nature and in their effects and have impaired VONETTA CYRUS-BARKER'S ability to carry on and enjoy life's activities.

12.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

**COUNT SIX:**
    JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, INDIVIDUALLY, v. BRENDA KULIKOWSKI

1.-6.    Paragraphs 1 through 6 of COUNT FOUR are hereby incorporated and made paragraphs 1 through 6 of this COUNT SIX.

7.    At all times mentioned, JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, were and still are the parents and natural guardians of '                          and are responsible for the care and support of '                        ˉ until at least age 18.

8.    As a result of the injuries to '                        ˉˉˉˉ  JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, have incurred and will continue to incur expenses for medical care and treatment, special education, habilitation and rehabilitation, all to their financial loss.

9.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

**COUNT SEVEN:**

                              ppa VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR v.

**BRIDGEPORT HOSPITAL**

1.      At all times mentioned herein the defendant, BRIDGEPORT HOSPITAL, was a specially chartered corporation licensed to do business in the State of Connecticut operating a hospital providing physicians, obstetricians, nurses and other health care professionals with its principal place of business in Bridgeport, Connecticut.

2.      At all times mentioned herein, JUDY L. BOSLOW, was a servant, agent, apparent agent and/or employee of the defendant, BRIDGEPORT HOSPITAL.

3.      At all times mentioned herein, Britta Panda, was a servant, agent, apparent agent and/or employee of the defendant, BRIDGEPORT HOSPITAL.

4.      Commencing on or about May 30, 2009, and thereafter the defendant, BRIDGEPORT HOSPITAL and its servants, agents, apparent agents and/or employees undertook the care, treatment, monitoring, diagnosing and supervision of the infant plaintiff,
then in utero, and the infant plaintiff's mother, VONETTA CYRUS-BARKER, for pregnancy, labor, delivery and post-delivery care.

5.      While under the care, treatment, monitoring, diagnosing and supervision of the defendant, BRIDGEPORT HOSPITAL and its servants, agents, apparent agents and/or employees,
                              ; suffered severe, serious, painful and permanent conditions as hereinafter set forth in Paragraph 7.

6.     The said injuries were caused by the failure of the defendant, BRIDGEPORT HOSPITAL and its servants, agents, apparent agents and/or employees to exercise reasonable care under all of the facts and circumstances then and there present in that they:

a.     failed to adequately and properly care for, treat, diagnose, monitor and supervise,                              then in utero, and, VONETTA CYRUS-BARKER, for pregnancy, labor, delivery and post delivery care;

b.     failed to recognize and identify that VONETTA CYRUS-BARKER was at increased risk for delivering a baby with cephalopelvic disproportion;

c.     failed to recognize that                              was at increased risk for cephalopelvic disproportion;

d.     failed to anticipate or prepare for a difficult delivery due to macrosomia;

e.     failed to complete the general admission information;

f.     failed to obtain the prenatal record prior to delivery;

g.     failed to review prenatal record prior to delivery:

h.     failed to address the significant errors in documentation (inaccurate weight gain during pregnancy, previous macrosomia not recorded on history and inaccurate weight of first baby);

i.     failed to perform an ultrasound;

j.     failed to recognize that VONETTA CYRIS-BARKER was at risk for a delivery complicated by macrosomia;

k.     failed to recognize that I                              was at risk for shoulder dystocia;

l.     failed to properly consider VONETTA CYRUS-BARKER'S medical history;

m.     failed to identify the inaccuracy of the delivery summary, as to the description of the delivery;

13

n.   failed to discuss options for delivery and risks and benefits of a cesarean section versus a vaginal birth;

o.   failed to adequately and properly assess VONETTA CYRUS-BARKER'S ability to deliver vaginally;

p.   failed to make safe treatment choices for the delivery of

q.   failed to safely deliver

r.   failed to timely diagnose and treat the shoulder dystocia;

s.   failed to properly use acceptable delivery maneuvers;

t.   employed dangerous and improper delivery maneuvers;

u.   applied excessive traction, pressure and/or torsion to during delivery;

v.   failed to perform a cesarean section;

w.   failed to properly supervise delivery room personnel;

x.   failed to utilize the shoulder dystocia drill;

y.   failed to have personnel experienced with shoulder dystocia in the delivery room;

z.   failed to document the management of labor and delivery;

aa.  failed to provide physicians and surgeons who possessed the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor, and supervise '                           nen in utero, and VONETTA CYRUS-BARKER, during pregnancy, labor and post delivery care;

bb.  failed to promulgate and/or enforce rules, regulations, standards and protocols for the treatment of patients such as, '                           then in utero, and, VONETTA CYRUS-BARKER;

14

7.      As a result of the carelessness and negligence of the defendant, BRIDGEPORT HOSPITAL and its servants, agents, apparent agents and/or employees, _____ has suffered the following severe, serious, painful and permanent injuries:

      a.      shoulder dystocia;

      b.      right arm brachial plexus palsy;

      c.      right brachial plexus dysfunction;

      d.      weak right hand grasp;

      e.      cannot pronate well;

      f.      unable to supinate;

      g.      decrease elbow flexion;

      h.      does not lift up her right arm spontaneously over her head;

      i.      tightness of adduction/abduction external rotation;

      j.      can only rotate her right arm with assistance;

      k.      continues to cup her fingers, does not open or spread fingers;

      l.      limited right wrist extension;

      m.      limitation of deltoid and biceps function;

      n.      decreased range of motion of right shoulder, elbow, wrist and hand;

      o.      prolonged rehabilitation;

      p.      surgical procedure;

      q.      probable future surgeries and procedures

r.      psychological, physiological and neurological sequelae.

8.      As a result of her injuries,                        has been permanently deprived of her ability to carry out and enjoy life's activities and her earning capacity has been permanently diminished.

9.      As a further result of the aforementioned injuries and damages, from age 18, will incur expenses for medical care and treatment and other costs for special education, rehabilitation and habilitation, all to her financial loss.

10.     On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

**COUNT EIGHT:**
**VONETTA CYRUS-BARKER, INDIVIDUALLY V. BRIDGEPORT HOSPITAL**

1.-7.   Paragraphs 1 through 7 of COUNT SEVEN are hereby incorporated and made paragraphs 1 through 7 of this COUNT EIGHT.

8.      At all times mentioned herein, VONETTA CYRUS-BARKER, was and still is the mother of the infant plaintiff,

9.      The defendant, BRIDGEPORT HOSPITAL, and its servants, agents, apparent agents and/or employees, knew or should have known that their conduct involved an unreasonable risk of causing emotional distress and that the distress might result in illness or bodily harm.

10.   The defendant, BRIDGEPORT HOSPITAL, and its servants, agents, apparent agents and/or employees, knew or should have known that their conduct was foreseeable and likely to cause VONETTA CYRUS-BARKER emotional distress.

11.   The fear and severe psychological, physiological and emotional distress suffered by VONETTA CYRUS-BARKER was reasonable in light of the conduct of the defendant, BRIDGEPORT HOSPITAL, and its servants, agents, apparent agents and/or employees.

12.   The conditions described above are painful, serious and permanent in their nature and in their effects and have impaired VONETTA CYRUS-BARKER'S ability to carry on and enjoy life's activities.

13.   On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court. A copy of said petition is attached hereto as Exhibit A.

COUNT NINE:
        JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, INDIVIDUALLY v. BRIDGEPORT HOSPITAL

1.-7.   Paragraphs 1 through 7 of COUNT SEVEN are hereby incorporated and made paragraphs 1 through 7 of this COUNT NINE.

8.   At all times mentioned, VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR were and still are the parents and natural guardians of                              and are responsible for the care and support of                        until at least age 18.

17

9.    As a result of the injuries to                          VONETTA CYRUS-BARKER and
JONATHAN MORA-ALPIZAR have incurred and will continue to incur expenses for medical care and
treatment, special education, habilitation and rehabilitation, all to their financial loss.


10.    On or about May 5, 2011, pursuant to Connecticut General Statutes §52-190(a)(b), an
automatic ninety (90) day extension of the statute of limitations was filed with the Superior Court.  A
copy of said petition is attached hereto as Exhibit A.

WHEREFORE, THE PLAINTIFFS, ⎯⎯⎯⎯⎯ ⎯⎯⎯⎯⎯ ppa VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR, VONETTA CYRUS-BARKER, INDIVIDUALLY, and JONATHAN MORA-ALPIZAR and VONETTA CYRUS-BARKER, INDIVIDUALLY, HEREBY CLAIM MONETARY DAMAGES IN EXCESS OF FIFTEEN THOUSAND & 00/100 ($15,000.00), EXCLUSIVE OF INTEREST AND COSTS, STATE THAT IN THIS MATTER IS WITHIN THE JURISDICTION OF THIS COURT, AND FURTHER MAKE THE FOLLOWING RELIEF:

a.   Compensatory damages;

b.   Interest;

c.   Expenses and costs of prosecuting this action to which the plaintiffs are entitled, including, but not limited to, experts' fees and costs;

d.   Such other relief to which the plaintiffs are entitled, either in law or equity, which the court deems just and proper.

Of this writ, with your doings thereon, make due service and return.

Dated at Bridgeport, Connecticut this 24TH day of August, 2011.

THE PLAINTIFFS,

BY:_____

JOEL H. LICHTENSTEIN
KOSKOFF, KOSKOFF & BIEDER, PC
350 FAIRFIELD AVENUE
BRIDGEPORT, CONNECTICUT 06604
TELEPHONE NO. (203) 336-4421
JURIS NO. 32250

PLEASE ENTER THE APPEARANCE OF:

KOSKOFF, KOSKOFF & BIEDER, P.C.
350 FAIRFIELD AVENUE
BRIDGEPORT, CONNECTICUT 06604
TELEPHONE NO.  (203) 336-4421
JURIS NO. 32250

| RETURN DATE: SEPTEMBER 27, 2011 | : | SUPERIOR COURT |
|---|---|---|
| ppa VONETTA | : | JUDICIAL DISTRICT OF FAIRFIELD |
| CYRUS-BARKER and JONATHAN MORA-ALPIZAR | : | |
| VONETTA CYRUS-BARKER, INDIVIDUALLY, | : | |
| and JONATHAN MORA-ALPIZAR and | : | |
| VONETTA CYRUS-BARKER, INDIVIDUALLY | : | |
| | | |
| V. | : | AT BRIDGEPORT |
| | | |
| OPTIMUS HEALTH CARE, INC., | : | |
| BRENDA KULIKOWSKI and BRIDGEPORT HOSPITAL | : | AUGUST 24, 2011 |

## CERTIFICATION

I, JOEL H. LICHTENSTEIN, hereby certify that I have made reasonable inquiry, as permitted by the circumstances, to determine whether there are grounds for a good faith belief that there has been negligence in the care and treatment of the infant plaintiff,                    and affecting VONETTA CYRUS-BARKER and JONATHAN MORA-ALPIZAR. This inquiry has given rise to a good faith belief on my part that grounds exist for an action against the defendants, OPTIMUS HEALTH CARE, INC., and its servants, agents, apparent agents and/or employees, BRENDA KULIKOWSKI, BRIDGEPORT HOSPITAL and its servants, agents, apparent agents and/or employees and JUDY L. BOSLOW.

THE PLAINTIFFS,

By:_____

JOEL H. LICHTENSTEIN
KOSKOFF, KOSKOFF & BIEDER
350 FAIRFIELD AVENUE
BRIDGEPORT, CONNECTICUT 06604
TELEPHONE NO. 203-336-4421
JURIS NO.: 032250

21

PHYSICIAN'S OPINION
PURSUANT TO C.G.S., SECTION 52-190a

*[NOT SUBJECT TO GENERAL DISCLOSURE]*

Dear Mr. Lichtenstein:

Thank you for asking me to review the medical records of Vonetta Cyrus-Barker and _____. This case falls within the realm of my expertise as being board-certified in obstetrics & gynecology with special interest in shoulder dystocia and brachial plexus injury.

I have reviewed the following medical records:

1. Optimus Healthcare – Prenatal Records

2. Bridgeport Hospital – Mother's Records

3. Bridgeport Hospital – Baby's Records

4. Ahlbin Center for Rehabilitation Medicine

5. Office records of Dr. Sophia Leonida

6. Fetal Monitor Strips

Based upon my review of the above records, it is my opinion that there appears to be evidence of medical negligence on the part of Brenda Kulikowski, CNM, Optimus Healthcare, Dr. Britta Panda, Dr. Judy Boslow and Bridgeport Hospital in the care and treatment of Vonetta Cyrus-Barker between August 29, 2008 and May 30, 2009 which resulted in the newborn, _____, having erb's palsy.

Vonetta Cyrus-Barker received her prenatal care from Optimus Healthcare. Having had a previous 10 lb. baby, there was an increased risk for another macrosomic infant. Additional risk factors for a difficult delivery, including, shoulder dystocia, were maternal obesity and excessive weight gain during the pregnancy. At both the April 16, 2009 and April 30, 2009 prenatal visits, the fundal height was noted to be large for gestational age and a clearly indicated ultrasound exam was documented but never done. At the May 28, 2009 prenatal visit the signs and symptoms of labor were reviewed, but there was no

estimation of fetal weight by any means.  Of note, Brenda Kulikowski, CNM saw the patient at all but one prenatal visit.

During labor on May 30, 2009, at Bridgeport Hospital, there was no anticipation of, or preparation for, a difficult delivery due to macrosomia.  It appears that the prenatal records were not reviewed by the nurses or physicians prior to the delivery; in that the general admission information was reviewed and found to be incomplete, and current pregnancy information for prenatal care was left blank.  In addition, there are several significant information errors documented; pre-pregnant weight was 177 lbs not 186 lbs, weight gain was 71 lbs, not 56 lbs, macrosomia not recorded under obstetrical history, and weight of prior baby recorded as 8 lbs.  If these records were not available, they should have been obtained prior to delivery.

At delivery from the LOA position, the delivery summary incorrectly describes the right shoulder as being <u>posterior</u>.  The LOA position means the back of the baby's head is on the maternal left and the right shoulder is <u>anterior</u>.  Although McRoberts maneuver and suprapubic pressure were used after a shoulder dystocia was recognized, neither of these maneuvers, nor the use of traction, was successful.  Woodscrew maneuver and attempted delivery of the posterior arm were also unsuccessful.  There was no episiotomy performed.  Of note, although the resident physician, Dr. Britta Panda, was supervised by Dr. Judy Boslow, only Dr. Panda did the various maneuvers until the delivery of the posterior shoulder.

The departures from the standard of care for Brenda Kulikowski, CNM and Optimus Healthcare include the failure to recognize risk factors for a difficult delivery, including shoulder dystocia, and failure to obtain an ultrasound examination when fundal height measurement was significantly large for gestational age.  As a result Vonetta Cyrus-Barker was denied physician consultation prenatally, and there was no discussion of risk factors or options for delivery.  In addition, it does not appear that Brenda Kulikowski, CNM made sure that the prenatal records were sent to the hospital.

The departures from the standard of care for Dr. Britta Panda and Dr. Judy Boslow include the failure to obtain the prenatal records of Vonetta Cyrus-Barker prior to the

delivery. In the absence of prenatal records, they should have taken a careful history from the patient regarding weight of her prior birth. The knowledge of a previous macrosomic infant would have enabled them to anticipate and prepare for a possible shoulder dystocia and would have obligated them to discuss risk factors and delivery options that could have avoided a shoulder dystocia and injury. It is evident that this child's permanent brachial plexus injury noted at birth resulted from the use of other than gentle traction. In the absence of forceps usage or a malpresentation, facial bruising results from traction being applied too forcefully. Excessive traction is traction applied obliquely and/or too rapidly, and/or too forcefully. Dr. Judy Boslow should not have permitted the application of traction by Dr. Britta Panda, after a severe dystocia was recognized, when maneuvers were unsuccessful. It appears Dr. Boslow permitted more than one attempt at traction by Dr. Panda, instead of taking over the delivery when Dr. Panda's efforts failed. Until shoulder dystocia is relieved by appropriate maneuvers, permitting continued maternal pushing and the use of traction does not comply with the standard of care.

As to Bridgeport Hospital, they failed to provide adequate care and treatment, and failed to properly supervise Dr. Panda during the vaginal delivery of Vonetta Cyrus-Barker. The staff should have recognized that the general admitting information was incomplete and should have made an effort to obtain the prenatal record from Optimus Healthcare.

The opinions stated herein are based upon the information available to me at this time. As other information and evidence becomes available, through the discovery process, I remain available to assist you and reserve the right to supplement and/or amend these opinions.

| | | |
|---|---|---|
| PETITION TO THE CLERK | : | SUPERIOR COURT |
| ppa VONETTA | : | JUDICIAL DISTRICT |
| CYRUS-BAKER and JONATHAN MORA-ALPIZAR | : | OF FAIRFIELD |
| AND ANY OTHER PLAINTIFFS | | |
| YET TO BE IDENTIFIED | | |
| | | |
| v. | : | AT BRIDGEPORT |
| | | |
| OPTIMUS HEALTHCARE and/or its servants, | : | |
| agents, apparent agents and/or employees | | |
| BRENDA KULIKOWSKI, CNM and/or its servants, | : | |
| agents, apparent agents and/or employees | | |
| BRITTA PANDA, MD and/or its servants, agents, | : | |
| apparent agents and/or employees | | |
| JUDY BOSLOW, MD and/or its servants, agents, | : | |
| apparent agents and/or employees | | |
| BRIDGEPORT HOSPITAL and/or its servants, | : | |
| agents, apparent agents and/or employees | | |
| AND/OR ANY OTHER HEALTH CARE | : | |
| PROVIDERS YET TO BE DETERMINED | : | MAY 2, 2011 |

Pursuant to Connecticut General Statutes Section 52-190a(b), the undersigned hereby petitions for the AUTOMATIC ninety (90) day extension of the Statute of Limitations regarding the course of treatment given to                     and affecting VONETTA CYRUS-BARKER, JONATHAN MORA-ALPIZAR and any other plaintiffs yet to identified on or about MAY 30, 2009; to allow reasonable inquiry to determine that there was negligence in the care and treatment of                     by OPTIMUS HEALTHCARE and/or its servants, agents, apparent agents and/or employees; BRENDA KULIKOWSKI, CNM and/or its servants, agents, apparent agents and/or employees; BRITTA PANDA, MD and/or its servants, agents, apparent agents and/or employees; JUDY BOSLOW, MD and/or its servants, agents, apparent agents and/or employees; BRIDGEPORT HOSPITAL and/or its servants, agents,

# EXHIBIT A

apparent agents and/or employees and other health care providers and other professional corporations of health care providers, and their servants, agents and/or employees as yet to be determined.

COUNSEL FOR THE PETITIONER,

JOEL H. LICHTENSTEIN
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 FAIRFIELD AVENUE
BRIDGEPORT, CONNECTICUT 06604
TELEPHONE NO. 336-4421
JURIS NO. 32250

## ORDER

The foregoing Petition having been presented to the Clerk of the Court pursuant to Connecticut General Statutes Section 52-190a(b), it is hereby ordered that the statute of limitations be extended for ninety (90) days.

BY THE COURT

Clerk

Dated at _Bridgeport_, Connecticut, this _5th_ day of _May_, 2011.