UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
                                   :
MMC PPA,                           :
VONETTA CYRUS-BARKER,              :
JONATHAN MORA-ALPIZAR, AND         :
VONETTA CYRUS-BARKER, INDIV.       :
                                   :
v.                                 :   CIV. NO. 3:11CV1733(HBF)
                                   :
BRIDGEPORT HOSPITAL AND            :
UNITED STATES OF AMERICA           :
```

**RULING ON DEFENDANT USA'S MOTION TO DISMISS [DOC. # 66]**

Plaintiffs MMC ppa Vonetta Cyrus-Barker, and Jonathan Mora-Alpizar and Vonetta Cyrus-Barker, Individually,[1] assert claims of medical malpractice against defendants Optimus HealthCare, Inc., Brenda Kulikowski and Bridgeport Hospital arising out of the prenatal care and delivery of Vonetta Cyrus-Barker's daughter. The United States of America was substituted for defendants Optimus Health Care, a community health center in Bridgeport, and Brenda Kulikowski, a midwife at Optimus. Defendant[2] United States of America moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Plaintiffs oppose defendant's motion [doc. # 74]. For the reasons that follow, defendant's motion [doc # 66] is GRANTED.

---

[1] Vonetta Cyrus-Barker brings this action on behalf of her minor child, MMC, and Vonetta and Jonathan Mora-Alpizar, the child's parents, assert individual claims as well.

[2] Unless stated otherwise, all references to defendant in this ruling refer to the defendant United States of America, whose motion to dismiss is the subject of this ruling. Co-defendant Bridgeport Hospital has not moved to dismiss.

I.    Factual Background and Procedural History

Vonetta Cyrus-Barker (hereinafter "Cyrus-Barker") received prenatal care at Optimus Health Care from October 29, 2008, through May 28, 2009. On May 30, 2009, after approximately 12 hours of labor, Cyrus-Barker delivered her baby at Bridgeport Hospital. At birth, the baby weighed 10 pounds 7 ounces. During the delivery, the baby's shoulder became stuck behind the pubic bone, a condition referred to as shoulder dystocia. The baby suffered permanent injury to her right arm. Cyrus-Barker and her daughter were discharged from the hospital on June 2, 2009.

On June 11, 2009, the baby was seen by her pediatrician, Dr. Leonida. At that time, Dr. Leonida told Cyrus-Barker that the baby had been injured at birth. Specifically, Cyrus-Barker testified at her deposition that,

> She [the pediatrician] explained me that sometimes when the baby's like overweight, get stuck, so the baby – she explained me that there are some type of maneuver that they have to do to help the baby deliver. And sometimes they break the shoulder, but in that time that happened because they pull hard the baby. They pull so hard the baby that they injure like the baby, that they fail to do the maneuver like the maneuver they supposed to do.

[doc. # 77-1, Depo. Cyrus Barker, p. 65, 7:15].

Cyrus-Barker further testified that she was told at that time that her daughter would never fully recover, and "that is

the time when we like get like, like the reality of what
happened in the delivery." [doc. # 77-1, Depo. Cyrus Barker, p.
65, 17:20].

At a follow-up visit on October 7, 2009, Dr. Leonida
suggested that in light of the baby's injuries, Cyrus-Barker
should contact a lawyer. Dr. Leonida referred Cyrus-Barker to
her personal attorney, who in turn referred Cyrus Barker to
Koskoff Koskoff & Bieder. Cyrus-Barker retained Koskoff Koskoff
& Bieder on October 9, 2009.

Following a preliminary investigation, on December 15,
2010, plaintiffs' attorneys served two SF-95 forms[3] on Optimus,
the community health center. On August 19, 2011, plaintiffs'
counsel forwarded copies of the SF-95 claim forms to the
Department of Health and Human Services.  Plaintiffs'
administrative claims were denied and plaintiffs filed a case
against the defendants in state court, which was removed to this
Court on November 9, 2011.

Defendant moves to dismiss the complaint for lack of
subject matter jurisdiction. The defendant argues that the Court
lacks jurisdiction because plaintiffs failed to file their
administrative claim with the appropriate federal agency within

---

[3] An SF-95 form is a General Services Administration form used to
make a claim against a federal agency under the Federal Tort
Claims Act for damage, injury or death.

the two year statute of limitations as required by the Federal
Torts Claims Act.

## II.  Legal Standard

As the parties seeking to invoke the jurisdiction of the
court, plaintiffs bear the burden of demonstrating that subject
matter jurisdiction is proper based on facts existing at the
time the complaint was filed. Scelsa v. City Univ. of N.Y., 76
F.3d 37, 40 (2d Cir. 1996). Under Rule 12(b)(1), the court must
accept as true all material factual allegations in the complaint
but will not draw inferences favorable to the party asserting
jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d
107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos,
140 F.3d 129, 131 (2d Cir. 1998). For the purposes of a Rule
12(b)(1) motion, the court may consider affidavits and other
materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d
at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140–41 & n.
6 (2d Cir. 2001).

It is well settled that, absent consent, the United States
is immune from suit, as are its agencies and its officers when
the latter act in their official capacities. FDIC v. Meyer, 510
U.S. 471, 475 (1994); Dotson v. Griesa, 398 F.3d 156, 177 (2d
Cir. 2005). Therefore, a waiver of sovereign immunity is a
jurisdictional prerequisite to a suit against the federal
government or its officers. Providing a limited waiver of

4

sovereign immunity, the FTCA affords the sole remedy, in the
form of a suit against the United States, for a "personal injury
... arising or resulting from the negligent or wrongful act or
omission of any employee of the Government while acting within
the scope of his office or employment." See 28 U.S.C. §§
1346(b)(1), 2679.

Here, the U.S. Attorney's Office certified that defendants
Optimus Health Care, Inc. and Brenda Kulikowski "were acting
within the scope of their federal employment as employees of the
Public Health Service at the time of the incident out of which
the Plaintiffs' claim arose." [doc. # 2, Certification of Scope
of Employment under 42 U.S.C. § 233(c) and 28 U.S.C. § 2679(d)].
Thus, the United States was substituted as a party defendant in
their place and plaintiffs' claims against these defendants fall
under the FTCA.

The FTCA requires, as a jurisdictional prerequisite to
suit, that a plaintiff exhaust administrative remedies with the
"appropriate federal agency" before filing suit. See 28 U.S.C. §
2675(a). Moreover, a "tort claim against the United States [an
FTCA claim] shall be forever barred unless it is presented in
writing to the appropriate Federal agency within two years after
such claim accrues". 28 U.S.C. § 2401(b).

## III. Discussion

Defendant argues that plaintiffs' claim was not timely presented in writing to the appropriate federal agency. Neither party disputes that the appropriate federal agency in this case was the Department of Health and Human Services. Defendant argues that under 28 U.S.C. § 2675(a) and 28 U.S.C. § 2401(b), plaintiffs had two years from the accrual of their claim to notify the Department of Health and Human Services and failed to do so, thus divesting this Court of jurisdiction.

Plaintiffs make several arguments to sustain this Court's jurisdiction. First, plaintiffs argue that their claims are not untimely under the FTCA's diligence discovery rule of accrual. And, second, plaintiffs argue that their claim was constructively filed on December 15, 2010 when Optimus was notified. The Court takes each argument in turn.

### A. Diligence-Discovery Rule of Accrual

The central issue in dispute is the date on which plaintiffs' claims accrued. Defendant argues that the claim accrued at the latest on May 30, 2009, the date on which the baby was born. Plaintiffs argue that the earliest their claim accrued was October 7, 2009, when Dr. Leonida suggested that Cyrus-Barker call an attorney to get care for her daughter.

Pursuant to federal law, "[c]laims under the FTCA accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999) (citing United States v. Kubrick, 444 U.S. 111, 118-22 (1979)). See also Davis v. United States, 430 F. Supp. 2d 67, 73 (D. Conn. 2006).

"Ordinarily, a plaintiff's FTCA claim accrues at the time of injury." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (citing Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982)). Accrual may be postponed where plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted," to the time when "plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." Kronisch, 150 F.3d at 121. In such circumstances, "[d]iscovery of the 'critical facts' of injury and causation is not an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." Id. In other words, "a plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim." Id. (quoting Barrett, 689 F.2d at 327).

7

"Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." <u>Kronisch</u>, 150 F.3d at 121 (citing <u>Guccione v. United States</u>, 670 F. Supp. 527, 536 (S.D.N.Y. 1987), <u>aff'd on other grounds</u>, 847 F.2d 1031 (2d Cir. 1988), <u>cert. denied</u>, 493 U.S. 1020 (1990)). In determining the accrual date of a medical malpractice claim brought under the FTCA, notice to plaintiff must be of iatrogenic, or doctor-caused, harm, but does not have to be of negligent iatrogenic harm. <u>Valdez ex rel. Donely v. U.S.</u>, 518 F.3d 173, 178 (2d Cir. 2008); 28 U.S.C.A. § 2401(b).

Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim," "such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." See <u>Kronisch</u>, 150 F.3d at 121 (internal citations omitted).

At the outset, the Court rejects defendant's argument that the claim accrued on the date of the child's birth. There is nothing in the record before the Court to suggest that Cyrus-Barker knew that her daughter had been permanently injured during birth as a result of the doctor's actions or had any reason to inquire further. See <u>Rice ex rel. Rice v. U.S.</u>, 889 F. Supp. 1466, 1471 (N.D. Okl. 1995) (denying summary judgment where "[mother] was not put on notice in any way that

[baby's] ailments were related to any action or omission traceable to personnel at CIH"). The Court accepts Cyrus-Barker's testimony that after her daughter's birth, she was told at the hospital that the "baby will be fine, but she going to have to have a couple physical therapy." [doc. # 77-1, Cyrus Barker depo. p. 63, 6:8].

The Court finds that Cyrus-Barker became aware of the basic facts of the injury after the first visit with her daughter's pediatrician, Dr. Leonida, on June 11, 2009. But see, Valdez ex rel. Donely, 518 F.3d 173, 179 (2d Cir. 2008) (remanding to district court for further development of record on accrual date where "nothing in the hospital records indicate that Elon's mother had any understanding that there was a potential doctor-related cause of Elon's injury"). Cyrus-Barker said so herself at her deposition, testifying that at that visit, Dr. Leonida explained that when babies are overweight they can get stuck, requiring the doctors to execute a maneuver to help deliver the baby, during which sometimes the doctors break the shoulder. She further testified that she learned that at times doctors pull so hard that they injure the baby, failing to do "the maneuver [like] they supposed to do". Notably, she testified that at the visit she learned that her daughter would never recover 100% and she realized that her daughter's injuries occurred during the delivery. Specifically, she testified, "So that is the time when

9

we like get like, like the reality of what happened in the delivery."

It was at this visit that Cyrus-Barker learned the "what" and the "who" of her daughter's injury; namely that her daughter was permanently injured at birth by the doctors during delivery. See Barrett, 689 F.2d at 330 (calculating date of accrual by application of diligence-discovery rule where both the what element of causation and the who element are present). It was on June 11, 2009 that plaintiff's claim against the United States accrued.

Therefore, plaintiffs must have properly notified the Department of Health and Human Services of their claim by June 11, 2011, two years from the date of the accrual. Unfortunately, plaintiffs' claim was not filed with the Department of Health and Human Services until August 19, 2011, a little over two months after the expiration of the statute of limitations applicable to claims brought under the FTCA.

**B. Constructively filed**

Next, plaintiffs argue that the August 19, 2011 date is not the filing date the Court should consider for purposes of complying with the FTCA. Rather, plaintiffs argue they constructively filed their claims on December 15, 2010, the date that the claim was filed with Optimus. To support this argument,

10

plaintiff relies on two separate bases. First, plaintiff advances that the Court can find that Optimus constitutes a "federal agency" for purposes of 28 C.F.R. § 14.2(b)(1), to which notice was effectuated. Second, and alternatively, plaintiff argues that even if the Court does not find that Optimus is a federal agency to whom notice was properly given, Optimus was required to transfer the plaintiffs' claim forms to the Department of Health and Human Services pursuant to the Federal Tort Claims Act Health Center Policy Manual, and that their failure to do so permits the Court to find a constructive filing of the notice.

## 1. Federal Agency

Plaintiff argues that the Court should conclude that Optimus constitutes a "federal agency" for purposes of 28 C.F.R. § 14.2(b)(1), which includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671. To that point, plaintiffs argue that under the Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), 42 U.S.C. § 223, employees of community health centers are deemed to be employees of the

Public Health Service, which is a division of the Department of Health and Human Services, which in turn is an "executive department". Thus, plaintiffs argue, Optimus should be considered an executive department which is a federal agency for purposes of the FTCA.

Pursuant to 28 C.F.R. § 14.2(b) when a claim is presented to the wrong federal agency, that agency shall transfer the claim to the appropriate agency, if the agency can be identified from the claim. If transfer is not feasible, the claim should be returned to the claimant. Id.  The Second Circuit has held that a district court may find constructive filing when the plaintiff files with the wrong federal agency and the agency fails to transfer the claim. Mosseri v. FDIC et al., 1996 U.S. App. LEXIS 33504, at *6, Civ. No. 96-6152 (2d Cir. Dec. 23, 1996) (summary order) (citing cases)(remanding to district court to consider issue of constructive filing where FDIC failed to contact GSA regarding plaintiff's claim).

The Court rejects the ipse dixit argument that Optimus is a "federal agency". Optimus is a federally funded community clinic and the fact that employees of Optimus are covered by the FTCA does not elevate the clinic to federal agency status. Because Optimus is not a federal agency, it had no obligation under the FTCA to forward plaintiffs' claim to the Department of Health and Human Services. The cases cited by plaintiffs are inapposite

in that they arise from situations where the claim forms were
sent to federal agencies, albeit, the wrong federal agencies.
See Bukala v. United States, 727 F. Supp. 382 (N.D. Ill. 1989)
(on remand finding constructive filing where plaintiff filed
notice within statute of limitations with EEOC instead of VA,
and EEOC, a federal agency, did not transfer claim to VA).
Moreover, this argument has been flatly rejected by other
courts. See e.g., Motta ex. rel. A.M. v. United States, 717 F.3d
840, (11th Cir. 2013). The Department of Health and Human
Services is *the* federal agency to which plaintiffs should have
sent the SF-95 form in order to satisfy their administrative
exhaustion requirements under the FTCA. Plaintiffs' failure to
do so within two years of the accrual date deprives this court
of jurisdiction.

**2. FTCA Manual**

Plaintiffs argue that the Court should find constructive
filing because Optimus was obligated to transfer claims to the
Department of Health and Human Services pursuant to the Federal
Tort Claims Act Health Center Policy Manual.

The relevant section of the Manual provides that,

Occasionally, a claimant erroneously files a lawsuit in State
court in lieu of filing an administrative claim with HHS or
less than six months after filing an administrative claim with
HHS. These lawsuits are termed premature lawsuits.

> In the event that a claimant erroneously files a claim or
> serves a premature lawsuit documentation directly with the
> health center, a covered entity should fax or e-mail a copy of
> the documentation to OGC/GLD/CELB at the address provided
> below [. . .].
> [doc. # 74-2, FTCA Manual, at 19].

A careful reading of this section does not support plaintiffs' assertion. First, the language does not impose an obligation on the health center to transfer a claim to the agency, stating instead a suggested course of action or best practice, that a "covered entity *should* fax or e-mail a copy of the documentation". Id. (emphasis added). This chosen language stands in contrast to other sections of the manual where unequivocal obligations on the health center are described with the verb "must". For example, "Health centers expecting to operate at a temporary location beyond 90 days from the onset of the emergency *must* submit a request for a change in scope of project", or "To be deemed/covered under FSHCAA, an entity's deeming or redeeming application *must* provide sufficient documentation [. . .], or "When two or more covered entities merge to form a new corporate entity, the new corporation *must* apply for FTCA coverage regardless if one or both were previously covered entities. [doc, # 74-2, FTCA Manual, at 15, 17 (emphasis added)]. Second, and most importantly, any obligation on the health center to notify the federal agency does not obviate the claimant's obligation to do so under the

FTCA.  The manual itself recognizes this, stating at the outset that,

> While this FTCA Policy Manual is intended to be the principal Health Center program resource on FTCA matters, please note that if there are any conflicts between its content and FTCA law as interpreted by the courts (including federal statutes, regulations, and case law), the law prevails.

[doc. # 74-2, 2].

The particular facts of this case do not compel a finding of constructive filing. The obligation to properly notify the government of a claim within two years of the accrual date rests with the plaintiff, who sought legal advice within four months of the accrual date. The Court rejects the argument that the duty somehow can be shifted to Optimus. Here, there is no legal basis on which to find that Optimus is a federal agency, obligated to transfer the plaintiffs' notice to the appropriate federal agency. Any administrative requirement that Optimus notify the Department of Health and Human Services of plaintiffs' claim did not replace plaintiffs' obligation to notify the appropriate federal agency. Plaintiffs were aware of their claim as of June 11, 2009 and were soon after represented by counsel, as of October 7, 2009. Plaintiffs did not place Optimus on notice until December 15, 2010, over a year after their initial consultation with their attorneys. Plaintiffs did

not file with a "federal agency" until after the statute of limitations had expired.

## IV.  Conclusion

For the reasons stated, the Motion to Dismiss for lack of Jurisdiction by the United States [doc. # 66] is GRANTED. The case can proceed against the remaining defendant Bridgeport Hospital.

This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. # 49] on October 4, 2012 with appeal to the Court of Appeals.

ENTERED at Bridgeport, this 18th day of September 2013.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE