```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

MMC PPA,                              :
VONETTA CYRUS-BARKER                  :
JONATHAN MORA-ALPIZAR, AND            :
VONETTA CYRUS-BARKER, INDIV.          :
                                      :
                                      :
v.                                    :    CIV. NO. 3:11CV1733(HBF)
                                      :
BRIDGEPORT HOSPITAL AND               :
UNITED STATES OF AMERICA              :
```

RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION,
OR IN THE ALTERNATIVE, ARTICULATION [DOC. #80]

Plaintiffs MMC ppa Vonetta Cyrus-Barker, and Jonathan Mora-Alpizar and Vonetta Cyrus-Barker, Individually,[1] assert claims of medical malpractice against defendants Optimus HealthCare, Inc., Brenda Kulikowski and Bridgeport Hospital arising out of the prenatal care and delivery of Vonetta Cyrus-Barker's daughter. The United States of America was substituted for defendants Optimus Health Care, a community health center in Bridgeport, and Brenda Kulikowski, a midwife at Optimus. On September 18, 2013, the Court granted defendant United States of America's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). [Doc. #78]. Plaintiffs now seek reconsideration, or in the alternative, articulation of that decision as it pertains to the issue of accrual. [Doc. #80]. Defendant opposes plaintiffs' motion. [Doc. #88].  For the reasons stated below, plaintiffs' motion for reconsideration, or in the alternative, articulation [Doc. #80] is DENIED with

---

[1] Vonetta Cyrus-Barker brings this action on behalf of her minor child, MMC, and Vonetta and Jonathan Mora-Alpizar, the child's parents, assert individual claims as well.

respect to the request for reconsideration, and GRANTED to the extent it seeks further articulation on the issue of accrual.

I.  **BACKGROUND**

The Court presumes familiarity with the factual background of this matter, which is set forth in its ruling on defendant's motion to dismiss. [Doc. #78, 2-4]. However, in light of the arguments raised in the motion for reconsideration, the Court will briefly address the background of the ruling granting dismissal.

On May 15, 2013, defendant United States of America moved to dismiss the complaint for lack of subject matter jurisdiction. [Doc. #66]. Defendant[2] argued that the Court lacked jurisdiction because plaintiffs failed to file their administrative claim with the appropriate federal agency, the Department of Health and Human Services, within the two (2) year statute of limitations required by the Federal Torts Claims Act ("FTCA"). Pertinent to our discussion below, plaintiffs made several arguments to sustain the Court's jurisdiction, including that their claims are not untimely under the FTCA's diligence discovery rule of accrual.[3] [Doc. #74].

---

[2] Unless stated otherwise, all references to defendant in this ruling refer to the defendant United States of America.

[3] Plaintiffs also argued that their claim was constructively filed on December 15, 2010 when Optimus was served with two SF-95 forms. Although the substance of plaintiffs' motion for reconsideration only addresses the issue of accrual, by way of footnote plaintiffs also request that the Court reconsider each of the arguments opposing the motion to dismiss. [Doc. #80, 2 n.1]. The Court declines this request because plaintiffs have failed to point to any specific law or fact that would change the Court's conclusion with respect to these arguments. See Silva v. Town of Monroe, No. 07-1246(TLM), 2010 WL 1537901, at *2 (D. Conn. Apr. 16, 2010) (denying motion for reconsideration where moving party failed to identify any law or fact "that might reasonably be expected to alter the conclusions that [the Judge] reached in her [] [d]ecision.").

In granting the motion to dismiss, the Court found that plaintiffs' claims against defendant accrued on June 11, 2009, namely the date on which Vonetta Cyrus-Barker ("Cyrus-Barker") learned the basic facts of her daughter's injury from her pediatrician, Dr. Leonida. Because plaintiffs filed their claims with the Department of Health and Human Services on August 19, 2011, a little over two months after the expiration of the statute of limitations applicable to FTCA claims, the Court dismissed plaintiffs' claims against defendant.

## II. STANDARD OF REVIEW

The Second Circuit has held that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice." Whitserve, LLC v. GoDaddy.com, Inc., 3:11-CV-948 JCH, 2013 WL 1442449, at *1 (D. Conn. Apr. 9, 2013) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "That the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider." Whitserve, 2013 WL 1442449,

3

at *1 (citing Eisemann v. Greene, 204 F.3d 393, 395 n. 2 (2d Cir. 2000)). However, it is not "appropriate to use a motion to reconsider solely to re-litigate an issue already decided." Conn. Com'r of Labor v. Chubb Grp. of Ins. Companies, 3:11CV00997 AWT, 2013 WL 836633, at *1 (D. Conn. Mar. 6, 2013) (quoting SPGGC, Inc. v. Blumenthal, 408 F. Supp. 2d 87, 91 (D. Conn. 2006)); see also Lego A/S v. Best-Lock Const. Toys, Inc., No. 3:11cv1586 CSH, 2013 WL 1611462, at *2 (D. Conn. Apr. 15, 2013) (citation omitted) ("A motion for reconsideration is not simply a second bite at the apple for a party dissatisfied with a court's ruling…").

### III. **DISCUSSION**

In this instance, plaintiffs seek reconsideration to correct clear error and prevent manifest injustice. Plaintiffs argue that in determining the claims' accrual date against defendant, the Court erroneously attributed the acts and omissions of Bridgeport Hospital to Optimus. Specifically, plaintiffs argue that, "the Court failed to draw a distinction between the two defendants and, more importantly, between the pre-natal care, which was provided by Optimus, and the care at delivery, which was provided by Bridgeport Hospital." [Doc. #80, 1]. Therefore, plaintiffs maintain their argument that the earliest date plaintiffs' claims could have accrued against Optimus is October 7, 2009[4], and therefore, plaintiffs' claims against defendant are not barred by the FTCA's statute of limitations. Defendant argues that the challenged ruling

---

[4] At a follow-up visit on this date, Dr. Leonida suggested that Cyrus-Barker contact a lawyer in light of MMC's injuries.

reflects the distinction between Optimus and Bridgeport Hospital and that the Court correctly determined the accrual date of June 11, 2009.

As an initial matter, the Court did not "overlook[] the distinction between Bridgeport Hospital and Optimus and between the separate and independent claims made against each." [Doc. #80, 7]. The Court's ruling reflects the different roles played by Optimus and Bridgeport Hospital in the alleged medical malpractice. For example, in setting forth the applicable background, the Court notes that Cyrus-Barker received prenatal care at Optimus and, thereafter, delivered her baby at Bridgeport Hospital. [Doc. #78, 2]. The Court also carefully reviewed the parties' briefs, which extensively detailed the different roles of the defendants. [See, e.g., Doc. #74, 1-3]. The Court's ruling, moreover, concludes that, "The case can proceed against the remaining defendant Bridgeport Hospital." [Id. at 16].

Next, plaintiffs argue that in determining the claims' accrual date against defendant, the Court erroneously attributed the acts and omissions of Bridgeport Hospital to Optimus. The basis of plaintiffs' argument is flawed. In determining the claims' accrual date, the Court found that,

> Cyrus-Barker became aware of the basic facts of the injury after the first visit with her daughter's pediatrician, Dr. Leonida, on June 11, 2009. But see, Valdez ex rel. Donely, 518 F.3d 173, 179 (2d Cir. 2008) (remanding to district court for further development of record on accrual date where "nothing in the hospital records indicate that Elon's mother had any understanding that there was a potential doctor-related cause of Elon's injury"). Cyrus-Barker

5

> said so herself at her deposition, testifying that at that visit, Dr. Leonida explained that when babies are overweight they can get stuck, requiring the doctors to execute a maneuver to help deliver the baby, during which sometimes the doctors break the shoulder. She further testified that she learned that at times doctors pull so hard that they injure the baby, failing to do "the maneuver [like] they supposed to do". Notably, she testified that at the visit she learned that her daughter would never recover 100% and she realized that her daughter's injuries occurred during the delivery. Specifically, she testified, "So that is the time when we like get like, like the reality of what happened in the delivery."
>
> It was at this visit that Cyrus-Barker learned the "what" and the "who" of her daughter's injury; namely that her daughter was permanently injured at birth by the doctors during delivery. See Barrett, 689 F.2d at 330 (calculating date of accrual by application of diligence-discovery rule where both the what element of causation and the who element are present). It was on June 11, 2009 that plaintiff's claim against the United States accrued.

[Doc. #80, 9-10].

Dr. Leonida's June 11, 2009 explanation of the injury provided notice of the "critical facts" of the iatrogenic harm. At this visit, Cyrus-Barker acquired the "knowledge that <u>could lead</u> to [] the basic facts of the injury[,]" and moreover, she knew, or should have known, "enough of the critical facts of injury and causation to protect [herself] by seeking legal advice." See Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (emphasis added).  Indeed,

> The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury <u>or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between treatment and injury</u>.  It is important to note that a plaintiff does not have to know the full extent

>of his or her injury, nor must he know the cause of his injury in exhaustive detail.

Mendez v. United States, 732 F. Supp. 414, 423 (S.D.N.Y. 1990) (citations omitted; emphasis added).

Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim," "such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." See Kronisch, 150 F.3d at 121 (internal citations omitted). Therefore, the statute of limitations begins to run "when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause – whichever comes first." Valdez ex rel. Donely v. U.S., 518 F.3d 173, 178 (2d Cir. 2008)(quoting Drazen v. U.S., 762 F.2d 56, 59 (7th Cir. 1985) (Posner, J.)) (emphasis added). "The issue of reasonable diligence is determined by an objective standard that measures the actions of a reasonable person in plaintiff's position armed with the same information." Mendez, 732 F. Supp. at 424 (compiling cases).

Here, Dr. Leonida's explanation of the sustained injury provided enough information that a reasonably diligent person should have conducted an inquiry into the claim and pursued it diligently. The doctor's explanation of MMC's injury provided the "suspicious circumstances" that should have prompted plaintiffs to seek legal advice and, therefore, discover the government's involvement in the claim. See Valdez, 518 F.3d at

7

178 ("[I]t would be inaccurate to say that the statute of limitations begins to run only when the government cause is known.")

To the extent plaintiffs argue that it took counsel nearly a year to appreciate the connection between MMC's injury and the prenatal care, "medical malpractice claims brought under the FTCA can, and often will, accrue <u>before</u> a plaintiff actually retains counsel and before counsel requests, let alone receives, the relevant medical records." <u>A.Q.C. ex rel. Castillo v. U.S.</u>, 656 F.3d 135, 141 (2d Cir. 2011) (emphasis in original). Plaintiffs' admission that it only took one year to appreciate the connection between MMC's injury and Cyrus-Barker's prenatal care further shows that there was enough time to file a complaint within two (2) years of June 11, 2009. Indeed, plaintiffs timely filed SF-95 forms on December 15, 2010, albeit under the unfortunate circumstance that plaintiffs filed the forms in the wrong location.

Finally, plaintiffs allege for the first time that Dr. Leonida "is not even qualified to offer such an opinion [i.e., that MMC's injury was caused by something Optimus employees did or failed to do in the course of providing prenatal care] against an obstetrical group." [Doc. #80, 13 n. 5]. The Court will not consider this argument where it is being raised for the first time on reconsideration. <u>See</u> <u>Chubb Group of Ins. Cos.</u>, 2013 WL 836633, at *1 (citations omitted)("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented before the Court, nor may it

be used as a vehicle for relitigating issues already decided by the Court."); see also Nat'l Union Fire Ins. Co. of Pittsburg v. Stroh Cos., Inc., 265 F.3d 97, 115 (2d Cir. 2001)(noting arguments raised for the first time on a motion for reconsideration may be rejected as untimely).

While it might have been clearer for the Court to expand upon its reasoning in finding the June 11, 2009 accrual date, the Court finds no reason to reconsider its prior ruling. In fact, and despite plaintiffs' protestations, the Court did not "overlook[] the distinction between Bridgeport Hospital and Optimus and between the separate and independent claims made against each." Reconsideration of this ruling is not required to correct clear error or prevent manifest injustice. Therefore, the Court adheres to its prior ruling that plaintiffs' claims accrued against defendant on June 11, 2009.

**IV.   CONCLUSION**

For the reasons stated, the Motion for Reconsideration, or in the Alternative, Articulation [Doc. #80] is DENIED with respect to the request for reconsideration, and GRANTED to the extent it seeks further articulation on the issue of accrual.[5]

SO ORDERED at Bridgeport this 5th day of May, 2014

```
           /s/
       _____
       HOLLY B. FITZSIMMONS
       UNITED STATES MAGISTRATE JUDGE
```

---

[5] This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. #49] on October 4, 2012 with appeal to the Court of Appeals.